209 A.2d 46.

GRACE E. HENRY *et al. d.b.a.* HENRY'S POULTRY FARM *vs.*
JOHN W. ESHELMAN & SONS.

APRIL 13, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This action of assumpsit for breach of warranty is here on the plaintiffs' exception to a decision of a justice of the superior court sustaining the defendant's demurrer to the plaintiffs' declaration on the ground of failure to allege facts therein sufficient to establish privity of contract between them and the defendant.

The declaration is in two counts each sounding in contract. It is alleged therein that "Plaintiffs have a just claim against the Defendant, which is due and owing, including interest thereon, and which claim the Defendant, although often requested, has refused to pay." The plaintiffs predicate such claim on the following alleged facts. The plaintiffs are poultry farmers. During December 1962, January, February and March, 1963, they raised large numbers of live chickens, and fed them poultry feeds purchased exclusively from Albert L. Matteson, a local feed dealer. Such feeds were manufactured and packaged in sealed bags by defendant intending them to be sold to the general public for consumption by chickens only. For such sale to the public, defendant impliedly warranted that the feeds were of merchantable quality and reasonably safe and suitable for the intended purpose. The feeds purchased by plaintiffs were not of such quality and prevented their chickens from receiving "a nutritionally balanced ration essential for the proper raising" of live chickens for the production of table eggs.

On the facts alleged in each count there is clearly no privity between plaintiffs and defendant. The plaintiffs concede this but contend that privity in a case of this kind is not a prerequisite to the maintenance of an action against a manufacturer of a food product packaged in a sealed container and sold to a retailer for purpose of resale to the general public. In such a case they contend that the law implies a warranty that the product is merchantable and fit for the purpose intended and that such warranty follows

the sale of the product into the hands of the ultimate consumer.

In sustaining the demurrer the trial justice rejected such contention and held that under the law in this state as decided in *Lombardi* v. *California Packing Sales Co.*, 83 R. I. 51, and reaffirmed in *Wolf* v. *S. H. Wintman Co.*, 87 R. I. 156, a consumer could not sue the manufacturer directly in assumpsit on such an implied warranty without alleging privity. The plaintiffs admit that such is the decisional law and that if this court adheres to it in the present instance their bill of exceptions must be overruled and the superior court's decision on the demurrer affirmed.

However, because it is decisional law and not of legislative creation they argue that such decisions may and should be overruled since they are based upon an erroneous idea that the implied warranty relied upon here is a contractual concept whereas it is actually tortious in nature. Hence they urge us to overrule *Lombardi* and *Wolf* and join the current of modern authorities which hold to the contrary, citing among other cases: *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244; *Freeman* v. *Navarre*, 47 Wash.2d 760; *Picker X-Ray Corp.* v. *General Motors Corp.*, D.C. Mun. Ct. of App., 185 A.2d 919; *Greenberg* v. *Lorenz*, 9 N.Y.2d 195; *Randy Knitwear, Inc.* v. *American Cyanamid Co.*, 11 N.Y.2d 5; *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358; *Graham* v. *Bottenfield's, Inc.*, 176 Kan. 68; *Rupp* v. *Norton Coca-Cola Bottling Co.*, 187 Kan. 390; *Goldberg* v. *Kollsman Instrument Corp.*, 12 N.Y.2d 432; and also 1 Frumer and Friedman, Products Liability, §16.03, p. 378.

A like contention was made by the plaintiffs in *Lombardi* and a number of similar cases from various jurisdictions were cited in support thereof. In the course of our opinion in that case we discussed these cases and concluded not to follow them for any of the variant reasons which led them to hold as they did. We said at page 57:

"In our judgment these cases use different approaches but in general strain for a beneficial result by declaring the existence of some form of a continuing implied warranty that inures to any consumer as a matter of public policy. But it seems to us that ordinarily the declaration of such a public policy is a function of the legislature and not of the court. It may well be that the statute here should be amended to conform more effectively to the advance or change in methods of purveying food in original sealed containers. But where, as here, the existing statute does not modify the common law so as to permit an action in assumpsit without privity, and where, unlike many of the twelve states referred to, actions of contract and tort are treated separately, each having a different form of action and statute of limitation and possibly different rules governing damages, we ought not to resort to judicial legislation, at least where no emergency or extreme conditions exist."

Three years later we were urged in *Wolf v. S. H. Wintman Co., supra*, to discard the privity of contract theory and overrule *Lombardi*. We declined to do so and again expressed the opinion that if such a change was to be made in the law the legislature should make it and not the court. But plaintiffs remind us that since this is our decisional law it may and should be changed by decision if a change in the conditions and circumstances of distributing products reasonably requires a change in the policy of the law.

Ordinarily there may be merit in that contention but in the present posture we think it lacks merit for the following reason. A decade has passed since we declared in *Lombardi* that if any change in the law was to be made from consideration of public policy the legislature should make it. During that period the legislature has met in annual sessions and has not seen fit to alter in any way the policy of the law underlying that decision notwithstanding its attention was again called to the continuing criticism of such policy manifested in *Wolf*.

Such long acquiescence in decisional law by the legislature, especially after its attention has been called to repeated litigious criticism of its underlying policy, is persuasive proof of at least implied legislative approval of the decisions. *St. Germain* v. *Lapp*, 72 R. I. 42. In this connection it is interesting to note that in some of the recent cases where the courts have overruled prior precedents and discarded entirely the privity of contract doctrine they have done so only after strong dissents or limiting concurring opinions. *Randy Knitwear, Inc.* v. *American Cyanamid Co.*, 11 N.Y.2d 5; *Greenberg* v. *Lorenz*, 9 N.Y.2d 195; *Freeman* v. *Navarre*, 47 Wash.2d 760; *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244; *Goldberg* v. *Kollsman Instrument Corp.*, 12 N.Y.2d 432.

In *Randy Knitwear* the New York court was closely divided 4 to 3. The majority flatly held "that the old court-made rule should be modified to dispense with the requirement of privity * * *." The minority categorically refused to subscribe to that holding. "We do not agree," they said, "that the so-called 'old court-made rule' should be modified to dispense with the requirement of privity without limitation."

And in *Greenberg*, Froessel, J., although concurring said: "This is an action in contract based on a statute * * *, not for negligence, and it is basic law that unless privity exists there can be no warranty, and where there is no warranty there can be no breach. We may not convert an action in contract into what really amounts to an action in tort. However much one may think liability should be broadened, that must be left to the Legislature."

In *Goldberg*, the New York court was again closely divided 4 to 3, the minority complaining that the majority went too far in equating warranty with the theory of strict liability. They said, at page 439: "Most scholars who have considered this question acknowledge that the warranty rationale is at best a useful fiction. * * * If a strict products

or enterprise liability is to be imposed here, this court cannot escape the responsibility of justifying it. We cannot accept the implication of the majority that the difference between warranty and strict products liability is merely one of phrasing."

In *Rogers* v. *Toni Home Permanent Co.*, the Ohio supreme court was closely divided 4 to 3 on discarding entirely the privity of contract theory. And in *Freeman* v. *Navarre*, the Washington supreme court was likewise divided. The action there was based on counts in negligence and breach of warranty. The majority held recovery could be had on either ground. The minority disagreed holding on the facts there was no showing of privity of contract and therefore there could be no warranty.

In our opinion these recent cases do not add any strength to the rationale underlying the opinions in the earlier cases which we discussed in *Lombardi* and found lacking in cogency necessary to convince us to follow them. We must note as we did in *Lombardi* that the immediate issue here is one of proper pleading in an action of assumpsit. Under this action the plaintiff cannot rely on any theory that breach of warranty is tortious in nature. With us, assumpsit is an action ex contractu and by statute may be joined with other similar actions. G. L. 1956, §9-4-1. But no count sounding in tort can be alleged therein along with a count sounding in contract. *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43. If breach of warranty is in reality a tort as some of the cited cases seem to assume in view of the historical research of Ames in 2 Harvard L. Rev. 1, then under our law it could not properly be prosecuted in an action of assumpsit notwithstanding the supposed eighteenth century practice in England to the contrary. For this reason we must assume that the case at bar being brought in assumpsit can include counts sounding only in contract and not in tort. If plaintiffs had brought their action in trespass on the case for negligence as was done

524

in *Minutilla,* what we held in *Lombardi* and *Wolf* and what we hold here would have no application.

In the absence of legislation modifying the law laid down in those cases the trial justice did not err in following them. However, plaintiffs claim that the legislature in enacting the uniform commercial code, G. L. 1956, §6A-2-318, has made at least a partial alteration in the decisional law and by the accompanying comment on that section has reminded this court of its authority to enlarge and develop the case law on the subject. They argue that this is a clear indication that the legislature looks to us to make such development and determine whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain. In other words, as we understand their construction of such comment, they claim the legislature has abdicated its prerogative to declare the policy of the law in this regard and has deferred to the court to enunciate such policy by exercise of the judicial process.

We find no merit in these contentions. Section 6A-2-318 reads as follows:

> "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

The comment on that section in the uniform commercial code as quoted by plaintiffs in their brief reads:

> "This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain."

They cite it as G. L. 1956, §6A-2-318, but we do not find it in that section in the legislative enactment of the code,

P. L. 1960, chap. 147, or in any amendment thereof at the time the case arose. In any event assuming that we should consider the comment as in the nature of a rule of construction of the statute, we perceive no reason for concluding that the legislature has indicated any view such as contended by plaintiffs. Moreover §§6A-2-315 and 6A-2-318 are not applicable to the case at bar. Those sections presuppose that the buyer is in privity with the seller and extends such privity "to any natural person who is in the family or household of his buyer or who is a guest in his home * * *." The comment quite correctly states that the section does not go beyond this but is neutral and is intended neither to enlarge nor restrict developing case law.

In the instant case our problem is entirely different. Here the buyer is not in privity with the seller but it is sought to create such privity by judicial decision on the theory of an implied warranty to any of the general public to whom the seller intended the product should be resold for use as the ultimate consumer. In those jurisdictions where the developing case law has been proceeding in such direction, §6A-2-318 if adopted there would have neither a restrictive nor enlarging effect thereon. In this jurisdiction since there has been no such developing case law on this precise subject, the question whether the section has any applicable significance is purely academic.

The plaintiffs' exception to the decision is overruled, and the case is remitted to the superior court for further proceedings.

JOSLIN, J., concurring. Just after the turn of the century this court in *McCaffrey* v. *Mossberg & Granville Mfg. Co.*, 23 R. I. 381, at least by way of dicta, departed from the rule in *Winterbottom* v. *Wright*, 152 Eng. Rep. 402, which limited the liability of a manufacturer for defects in his product to those with whom he was in privity. In *McCaffrey* we said that even in the absence of a direct contractual relationship, a manufacturer of a product immi-

nently dangerous to life or limb might be liable in an action of negligence to the ultimate consumer. Our reasoning was that the law imposes a duty "upon every one to avoid acts which, in their nature, are dangerous to the lives of others."

In *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43, the imminently or inherently dangerous to human safety doctrine, the application of which was at that time confined in many jurisdictions to products such as poisons and explosives, was extended to include foodstuffs and we held "that a maker who through a retailer furnishes unwholesome food or drink for public consumption may be directly liable [in an action for negligence] to the injured consumer who purchases from the retailer." In substance we followed *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, where Judge Cardozo said that the exception to the requirement of privity of contract in negligence actions should not be "limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction." To him, liability absent privity turned not on the inherent nature of the product, but on whether if negligently manufactured it was "reasonably certain to place life and limb in peril * * *." When that certainty was accompanied by "knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

While judicially we repudiated the privity of contract requirement in negligence actions for reasons resting at least in part on considerations of public policy, *Minutilla* v. *Providence Ice Cream Co.*, *supra*, at page 46, when it came to actions in assumpsit for breaches of implied warranties this court, in *Lombardi* v. *California Packing Sales Co.*, 83 R. I. 51, and *Wolf* v. *S. H. Wintman Co.*, 87 R. I. 156, adhered to the privity requirement holding in effect that a declaration of a public policy which might impose an obli-

gation on a manufacturer to exercise reasonable care to those whose life or limb may be exposed to risk in the use of his product is, in absence of emergency or extreme conditions, a legislative rather than a judicial function. The majority reaffirm the ground upon which the court based its decisions in *Lombardi* and *Wolf*.

While a deferral to the legislature in the initiation of changes in matters affecting public policy may often be appropriate, it is not required where the concept demanding change is judicial in its origins. The requirement of privity in suits against a manufacturer is such a concept. It is of judicial making and was first enunciated in *Winterbottom* v. *Wright, supra,* where Lord Abinger said not to insist upon it could result in "absurd and outrageous consequences, to which I can see no limit," and Alderson, B., opined that "The only safe rule is to confine the right to recover to those who enter into the contract * * *."

If historically there were a distinction between an action in tort and one in assumpsit for a breach of warranty, I would not be troubled by the dichotomy resulting from our judicial relaxation of the privity requirement in tort cases and the majority's insistence that any change in that requirement as to cases sounding in contract must come from the legislature. Such, however, is not the case for in early times an action for breach of warranty sounded in tort and it was not until *Stuart* v. *Wilkins,* 1 Douglas 18, was decided in 1778 that it was settled that such an action could be brought in assumpsit. 1 Williston, Sales (rev. ed.) §195, pp. 501-02; Prosser, Torts (2d ed.) §83, p. 493; Ames' History of Assumpsit, 2 Harvard L. Rev. 1, 8. In those circumstances, I agree with the statement that "Alteration of the law in such matters has been the business of the * * * courts * * *." *Greenberg* v. *Lorenz,* 9 N.Y.2d 195. See also *Picker X-Ray Corp.* v. *General Motors Corp.,* D.C. Mun.

Ct. of App,. 185 A.2d 919, and *General Motors Corp*. v. *Dodson*, 47 Tenn. App. 438.

There is, of course, no doubt that the courts have been much slower to break the privity barrier where the suit has been for a breach of an implied warranty rather than for negligence, but in recent years the legal writers almost unanimously, and the courts in ever-increasing numbers, have done so. Prosser, Torts (2d ed.) §84, pp. 507-08; 2 Harper & James, Torts §28.16, pp. 1570-74; *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120; *Randy Knitwear, Inc.* v. *American Cyanamid Co.*, 11 N.Y.2d 5; *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244; *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358.

Various devices have been adopted to achieve the result. They include theories that the manufacturer's vendee is the agent of the ultimate consumer or user, that the consumer is a third-party beneficiary, that the warranty "runs with the product," and that the social policy of our day, differing as it does from what it was in the days when the user more customarily dealt directly with the producer, calls for minimizing the danger to the consumer and placing the risk of loss upon him who has first placed the commodity in the chain of commerce. Prosser and 2 Harper & James, *supra*. The last-mentioned theory is perhaps predominant and the one which I find compelling.

I have deemed it advisable to set forth my views notwithstanding that I do not believe that considerations of public policy justify a departure from our requirement of privity on the facts of this case. How far those considerations will influence my views in the future must necessarily depend on the cases which may come before us. I am not yet, however, prepared to adopt a rule of strict liability which would make every producer a guarantor of the fitness of his product.

ROBERTS, J., concurs in the opinion of Joslin, J.

*Zietz, Sonkin & Radin, James Radin,* for plaintiffs.

*Francis V. Reynolds, Leonard A. Kiernan, Jr.,* for defendant.