GILES, APPELLEE, *v.* YELLOW CAB CO., APPELLANT.

[Cite as Giles v. Yellow Cab Co., 1 Ohio App. 2d 404.]

(No. 758—Decided May 14, 1964.)

*Messrs. Kimble, Schapiro, Stevens, Harsha & Harsha*, for appellee.

*Messrs. Miller, Searl & Fitch*, for appellant.

COLLIER, P. J. This is an appeal on questions of law from a judgment rendered on a verdict in the sum of $7,500 in favor of the plaintiff in an action to recover damages for personal injuries sustained in a collision between an automobile being driven by the plaintiff and a taxicab operated by the defendant on May 15, 1961, in the intersection of 11th and Chillicothe streets in Portsmouth, Ohio. The parties will be referred to herein as plaintiff and defendant in the same relation they appeared in the trial court.

The assignments of error will be considered in the order stated in the defendant's brief. For the first assignment of error the defendant claims that the court erred in permitting the plaintiff to ask each prospective juror this question:

"I will ask you if the evidence will show that subsequent to

this automobile accident, Mrs. Giles, the plaintiff here, did work up to the present time, would that fact prejudice you against her?''

The defendant contends that the purpose of the question was to learn in advance the view of the juror and to commit the juror to a certain position. We do not so construe the question. Often in the trial of a case, because of a certain situation, such questions are permissible. Of course, a question that would require a juror to commit himself in advance to take a certain position would be improper, but here it was merely asked whether the facts stated would prejudice the juror against the plaintiff.

The extent of the examination of prospective jurors as to their qualification or bias rests in the sound discretion and control of the court. It is only when it clearly appears that the court has abused its discretion that a judgment will be reversed on that ground. See 32 Ohio Jurisprudence 2d 656 *et seq.*, Section 70 *et seq.* We find no such abuse of discretion, and, therefore, this assignment is overruled.

The defendant, for its second assignment of error, claims that the court erred in permitting A. L. Berndt, a medical expert, in answer to a hypothetical question, to state an opinion of a causal relation between the accident and the alleged injury claimed by the plaintiff. The evidence shows that this witness was called in consultation on July 1, 1961, by Dr. Everett, plaintiff's attending physician; that he examined the plaintiff and recommended a continuation of the treatment begun by Dr. Everett; and that he again examined the plaintiff in his office on March 3, 1963, for the purpose of testifying in this case.

The defendant contends that the hypothetical question was improper for the reason the witness was not asked, nor did he state, what his findings were when he examined the plaintiff, or what treatment had been administered by Dr. Everett, which he approved; and that without these facts upon which the witness based his opinion being available to the jury, the jury could not properly weigh his testimony. Prior to being asked the hypothetical question, this witness was asked and answered this question in regard to his examination of the plaintiff on July 1, 1961:

''Q. Would you briefly state what condition you found at

the time you examined her? A. She had a strain of the bones and ligaments of the neck and upper portion of the thoracic spine in the back of the chest."

And, also, on the second examination the witness testified as follows:

"Q. Upon that examination what condition did you find in the examination of March 1, 1963? A. Considerably the same condition that I found before. I neglected to say that on the first examination there was found degenerative arthritis of the spine the first time. I should have given that before."

It is true that the witness was not asked and did not state the treatment prescribed by Dr. Everett, which he approved, but these facts were later disclosed on cross-examination and redirect examination of the witness. The rule, as announced in *Haas* v. *Kundtz,* 94 Ohio St. 238, is that the premises included in a hypothetical question must be established by the party calling the witness by a preponderance of the evidence. The record contains substantial evidence showing the doctor's findings and, in our opinion, the fact relating to the treatment of the plaintiff is of little or no consequence. This assignment is overruled.

Under assignment No. 3, the defendant claims error in limiting the defendant in cross-examination of plaintiff's medical witness. As stated above, Dr. Berndt, on direct examination, had testified that in his opinion the headaches and pain suffered by the plaintiff were caused by the collision. On cross-examination, the witness admitted that he found no objective symptoms of injury; that plaintiff had full range of motion of her head, neck and shoulders; that there was no sensory deficit or nerve involvement; that plaintiff was completely comfortable; and that he found evidence of degenerative arthritis of the spine. On cross-examination of this witness the record reads:

"Q. Could that type pain be coming from the arthritis she has in the thoracic area? A. I don't understand.
"* * * *

"Mr. Kimble: Objection, there is a question of possibility whether it is coming from that or not.

"The Court: Sustained."

Objections to other similar questions were also sustained. Apparently, the objection was sustained on the theory that the

defendant was required to prove that the plaintiff's headaches and pain were of arthritic origin and not caused by the alleged injury. The real issue in the case was whether or not the plaintiff sustained an injury as a direct and proximate result of the accident, and the burden was upon the plaintiff to establish these facts by a preponderance of the evidence. If the injury might have resulted from any other source, it was incumbent upon the plaintiff to produce evidence which would exclude the other causes. Paragraph two of the syllabus in *Gedra* v. *Dallmer Co.*, 153 Ohio St. 258, reads:

"In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible."

No burden rested upon the defendant to affirmatively show that plaintiff's disability of which she complained was caused by an arthritic condition. 56 Ohio Jurisprudence 2d 742, Section 314, reads in part:

"A party to an action has the right to a full and fair cross-examination of a witness in all matters material to the issue. To deny it as to a single question is manifest error."

The question asked by the defendant was proper on cross-examination, although it would have been objectionable on direct examination.

The value of cross-examination has been widely discussed by many authors on the subject and in many decisions. It has been said that the right to a full cross-examination is invaluable and cannot be overestimated; that the test of cross-examination is the highest and most indispensible known to the law for the discovery of the truth. See 56 Ohio Jurisprudence 2d 731 *et seq.*, Section 303 *et seq.*; 58 American Jurisprudence 339, Section 609 *et seq.*; and 5 Wigmore on Evidence, 3 Ed., 28, Section 1367. The defendant was deprived of the right of a full and fair cross-examination of a medical witness and this assignment is sustained.

Under the fourth assignment of error the defendant claims that the court erred in permitting plaintiff to explain why she

continued to work subsequent to her alleged injury. The record reads:

"Q. Mrs. Giles, in as much as you have continued to work even though you say you have this pain, would you explain to the jury why you have continued to work?

"Objection.

"The Court: Overruled, You may answer.

"A. Well, I have to work. My husband is disabled."

The record then shows an objection and motion by the defendant to strike the answer and instruct the jury to disregard the answer. The jury was then instructed by the court to consider this evidence for two purposes. First, that the plaintiff is the sole support of herself, and that she, as a married woman, was charged with and responsible for doctor and hospital bills incurred.

It will be observed that no part of the answer was stricken. The statement, "My husband is disabled," remained for the jury to consider for the two purposes designated by the court. The witness could easily have said that it was necessary for her to support herself and that she was personally responsible for the medical expenses incurred, without adding that her husband was disabled. Regardless of what prompted that part of the answer, it was improper and highly prejudicial to the rights of the defendant. Our Supreme Court, in several cases, has held that any testimony of the unfortunate domestic situation of the injured person is objectionable and inadmissible and serves only to arouse the sympathy of the jury. *City of Galion* v. *Lauer*, 55 Ohio St. 392; *Maggio* v. *City of Cleveland*, 151 Ohio St. 136; *Hudock* v. *Youngstown Municipal Ry. Co.*, 164 Ohio St. 493. The *Hudock case* is directly in point with the issue presented by this assignment of error, and on this authority the fourth assignment is sustained.

Under the fifth assignment of error the defendant claims that the court erred in permitting plaintiff's attending physician to testify that plaintiff had a life expectancy of 15 years. The generally accepted method of proving a life expectancy is by use of the mortality tables which are regarded as the best evidence. *Allen* v. *Burdett*, 139 Ohio St. 208. No authority for an individual to testify as to the probable duration of a given life has been cited and we find none. The witness admitted that

he had no special training and did not qualify as an expert. The general rule governing such proof is stated in 20 American Jurisprudence 735, Section 872, as follows:

"* * * In this regard, it has been said that the question as to the probable expectation of life is one which, in its nature, is appropriate for expert medical testimony; and in extreme cases testimony as to the future course of a disease may include an opinion that death will soon ensue. But, apart from such cases, the uncertainties attaching to the duration of any individual life are so great that the courts have felt compelled to refuse to attempt the estimate. Approximate justice is done by ascertaining the average duration of life of persons of the age of the one in question. * * *"

This assignment of error is sustained.

Under the sixth assignment of error defendant claims that the court erred in admitting evidence of X-ray expenses incurred in preparation for trial. The evidence shows that Dr. Berndt did not treat the plaintiff; that he was called in consultation by Dr. Everett, the attending physician, on July 1, 1961, and did not see the plaintiff again until March 3, 1963, upon request of her attorney for the purpose of giving testimony in the trial; and that the X-rays were ordered on the later date. Dr. Everett's testimony is that he knew about the X-rays and that they were necessary for the proper diagnosis and care of the plaintiff. Had such expenses been incurred by the plaintiff in procuring evidence in preparation for trial only, it would not have been a proper item of damage and should have been excluded. However, as the record stands, we find no error in including such item as a proper element of damage.

For its seventh assignment of error the defendant claims error in submitting the following issues:

A. Proximate cause of plaintiff's subjective complaints.

B. The issue of permanent injury.

C. The issue of future pain and suffering.

D. The issue of impairment of earning capacity.

The defendant claims that the medical proof is not sufficient to establish a direct causal relation between plaintiff's alleged permanent disability and her alleged injury. The collision occurred May 15, 1961, when defendant's cab and an automobile being driven by the plaintiff had stopped at the inter-

section of Eleventh and Chillicothe streets for a traffic light. On starting, the cab, which was four feet behind plaintiff's automobile, struck the rear of plaintiff's automobile and pushed it a car length or two into the intersection. On the same day the plaintiff complained of a stiff neck and two days later saw a doctor who had X-ray pictures taken and she was told to return if she had any more trouble with her neck. The plaintiff did not return and continued to work until June 26, 1961, when she went to see another physician, Dr. Everett, and was placed in a hospital for a period of ten days. Except for this period of ten days in the hospital, the plaintiff worked continuously from the date of the accident to the date of trial, doing cleaning work in a bank building.

The medical evidence consists of the testimony of three physicians. Dr. Berndt, who saw the plaintiff on July 1, 1961, and March 3, 1963, testified that neither examination of plaintiff disclosed any objective findings of injury and that his diagnosis was made on plaintiff's subjective complaints; that plaintiff had a strain of the bones and ligaments of the neck and upper portion of the thoracic spine; that the condition of which she complains, in his opinion, was the result of the accident and that such condition was permanent; and that the plaintiff had an arthritic condition of the spine.

Dr. Everett, who treated the plaintiff from June 26, 1961, to the date of trial, testified that he found no objective symptoms of an injury but that upon the subjective complaints of the plaintiff he diagnosed a mild cervical and dorsal strain and that such condition was permanent; and that plaintiff had a degenerative arthritic condition of the dorsal spine. On cross-examination Dr. Everett testified as follows:

"Q. Now, Mrs. Giles continued to work for 30 or 40 days after this accident and actually we have no way of knowing to a reasonable medical certainty whether that pain that she was complaining of was coming from her arthritis or from what you diagnosed on her subjective complaints would you? You cannot say that to a medical certainty? A. I could not say definitely, no.

"Q. You can't say with any reasonable medical certainty which it was coming from? A. No."

Dr. Oakes, called by the defendant, testified that he ex-

amined this plaintiff in February 1962, and in March 1963; that he found no evidence of an injury; that the plaintiff has rather severe arthritic changes in the entire dorsal spine and to a lesser degree in the cervical spine; and that the cause of plaintiff's pain in the neck and back, in his opinion, is from her arthritis.

The medical testimony of these three physicians, construed most favorably for the plaintiff, establishes the fact that the plaintiff sustained a mild strain of her cervical spine as a result of the accident; that the examination by the three doctors disclosed no objective findings of an injury and that all their opinions were based upon the complaints of the plaintiff; and that, except for the statement of Dr. Berndt, that in his opinion the disability of which plaintiff complained was caused by the accident, it is entirely a matter of speculation or guess whether plaintiff's disability is the direct and proximate result of the alleged injury or is caused by plaintiff's arthritic condition, which all three physicians agree exists.

It is elementary that in a negligence action the burden is upon the plaintiff to prove by a preponderance of the evidence that defendant's negligence was the proximate cause of plaintiff's injury. In the case of *Gedra* v. *Dallmer Co., supra,* the third paragraph of the syllabus reads:

"In such an action, if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."

And, in *Gerich* v. *Republic Steel Corp.,* 153 Ohio St. 463, the second paragraph of the syllabus reads:

"It is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain the burden as to such issue."

In several cases involving the question of proximate cause, the Supreme Court has held that the mere statement of a medical witness that there was "a causal relationship" between the accident and the injury complained of is not sufficient to establish such causal connection, but such statement must be supported

by substantial evidence. See *Senvisky* v. *Truscon Steel Division*, 168 Ohio St. 523, and the cases cited therein.

In view of the fact that the opinions of plaintiff's medical witnesses were based entirely upon subjective findings, that their examinations disclosed no objective symptoms of injury, that both physicians say the nature and extent of her injury was a mild strain, and that there is no evidence to support the statement of Dr. Berndt of a causal connection between the accident and plaintiff's disability, in the light of the authorities above cited, we are impelled to the conclusion that the issue of proximate cause of plaintiff's alleged permanent injury, future pain and suffering and impairment of earning capacity was not established by sufficient evidence. On the medical testimony the jury, at best, could only guess or speculate as to the truth of the proximate cause of plaintiff's alleged claims in these respects. The seventh assignment of error is sustained.

Under its eighth assignment of error the defendant claims that the verdict and judgment in the sum of $7,500 was excessive and that the verdict was rendered under the influence of passion and prejudice. After a careful examination of the record, our conclusion is that the verdict is excessive and probably resulted from a consideration of improper evidence, especially that relating to the unfortunate domestic situation of the plaintiff, which was emphasized throughout the trial, including the final argument. The evidence, however, is sufficient to establish a slight injury and, since there appears to be no question as to liability, which is frankly admitted, in defendant's brief, the plaintiff is entitled to proper compensatory damages.

For the reasons herein stated the trial court erred in overruling defendant's motion for a new trial, as claimed by the defendant in its ninth assignment of error.

The judgment must be, and hereby is, reversed and the cause is remanded to the Common Pleas Court for a new trial.

*Judgment reversed.*

BROWN and CARLISLE, JJ., concur.